[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDING OF FACT AND CONCLUSION OF LAW BACKGROUND
This action arises from the East Hartford Housing Authority's contract with Peter W. Lareau to provide financial aide to Shanta Smith to lease a dwelling unit from Peter W. Lareau under the HUD Section 8 Housing Assistance Payment Program. Under the terms of the contract, Peter W. Lareau agreed to lease an apartment to Shanta Smith for $764.00 per month. The Housing Authority agreed to make monthly housing assistance payments to Peter W. Lareau in the amount of $704.00. Shanta Smith was to pay the remainder each month. There is no dispute as to the basic contract. CT Page 10881
Plaintiffs' claims were occasioned by a lead abatement order issued by the East Hartford Health Department when the Health Department learned that a child of Shanta Smith was found to have an elevated blood lead level. Plaintiffs seek to recover the costs they allegedly incurred in abating the lead in their rental unit as well as attorneys' fees.
Plaintiffs' claims are based upon an agreement, or regulatory requirement, that the Housing Authority would inspect the proposed dwelling unit to insure that it met minimal Section 8 standards. Peter W. Lareau and JoAnn LaClair asserted claims for breach of contract, negligence per se, negligent misrepresentation, negligent failure to supervise employees, and recklessness. At the close of plaintiffs' evidence the court dismissed Counts Three, Four and Five. The remaining counts, breach of contract and negligence per se, remain to be decided.
FINDING OF FACT
The Court finds the following facts.
1. Peter Lareau applied to the East Hartford Housing Authority for participation in the Section 8 Housing Assistance Voucher program.
2. Peter Lareau contracted with the Housing Authority, JoAnn LaClair, his co-owner, did not.
3. By the terms of the contract, Peter Lareau agreed to warrant that the dwelling unit met the minimum housing quality standards, ("HQS") established by HUD.
4. As a condition for participation in the Section 8 program the Housing Authority was obligated to inspect the dwelling unit to verify that the unit satisfied the HUD minimum HQS.
5. With respect to lead contamination under Regulations then in effect, the Housing Authority was required to visually inspect for cracking, scaling, chipping, peeling or loose paint.
6. Defective surfaces of more than two square feet or 10% of the surface area of a component required treatment.
7. When a child under 6 with a known elevated blood lead level will occupy a dwelling unit, painted surfaces must be CT Page 10882 tested for lead using a XRF device or laboratory analysis.
8. Shanta Smith had a child under 6, but the parties stipulated that child was not known to have had an elevated blood lead level until after the inspection in question.
9. The East Hartford Housing Authority inspected the dwelling unit on November 30, 1995 and found it to be free of cracking, peeling, scaling, chipping, or loose paint or adequately treated and covered.
10. The inspection form was not provided to Peter Lareau or JoAnn LaClair until it was requested by them sometime after the presence of lead paint became an issue.
11. No representations were made to the plaintiffs by the Housing Authority with regard to possible lead contamination, other than that the unit, with minor modifications, met the HUD HQS.
12. Upon learning that a child under the age of 6 with an elevated blood lead level was residing in the dwelling unit, the East Hartford Health Department issued a lead abatement order to the plaintiffs dated August 30, 1996.
13. Shanta Smith and her family vacated the premises August 31, 1996.
14. Plaintiffs received the Abatement Order on September 3, 1996.
15. The Abatement Order may have been without force and effect if received after the child vacated the premises.
16. JoAnn LaClair and her "significant other" did much of the abatement work themselves and claim $72,680.00.
17. There is no contract, written or otherwise, obligating Peter Lareau to reimburse JoAnn LaClair or Mark Walters for any of the lead abatement costs.
18. JoAnn LaClair could have contracted to have had the lead abated for less money than it allegedly cost her to do the work herself, but she did not have the financial resources to hire a professional to do it. CT Page 10883
19. Plaintiffs claim $32,228.63 for attorney's fees owed to Attorney Block, but submitted no evidence in support thereof.
20. Raymond Quinn of the East Hartford Health Department testified that lead abatement costs between $8,000 and $20,000 for an apartment.
21. The Housing Assistance Payments Contract states that "nothing in this Contract shall be construed as creating any right of the family or other third party (other than HUD) to assert any claim against HUD or the [Housing Authority] or the owner under this contract.
22. The contract between HUD and the East Hartford Housing Authority, the Annual Contributions Contract, also specifies that no rights are created in third parties relative to the enforcement of the HQS by virtue of the contract.24 C.F.R. § 982.406 precludes anyone other than HUD from asserting any claim against the Housing Authority for damages for the alleged failure to enforce the HQS. 24 C.F.R. § 982.406.
23. On the evidence presented the Court could not make a determination of the reasonable cost of repair.
24. The court finds the plaintiffs claim to be inflated.
CONCLUSION OF LAW
1. The Housing Assistance Payments Contract did not obligate the Housing Authority to inspect the property for the benefit of the owner.
2. HUD Regulations specifically provide that Part 982 does not entitle anyone other than HUD or the Authority "to assert any claim against . . . or the Housing Authority, for damages, . . . or other relief. . . ."
3. The Annual Contributions Contract specifically precludes Housing Authority liability.
4. The Housing Authority did not contract with the plaintiff to warrant the absence of lead paint. CT Page 10884
5. Negligence per se exists if the plaintiff is within the class of persons whom the statute was intended to protect and if the harm was of the type that the enactment was intended to prevent.
6. Plaintiffs satisfy neither of the requirements set forth in paragraph five above.
7. The Housing Authority is not guilty of negligence per se.
DECISION
The Court finds the issue for the defendant.
By,
Kevin E. Booth, J.